IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America | ) | Case No.: 4:23-CR-00041-JD |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| | ) | |
| JEFFERY MARTINEZ SARVIS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant Jeffery Martinez Sarvis's ("Defendant" or "Sarvis") Motion to Suppress (DE 43). This Court held an evidentiary hearing on June 7, 2023, to consider Sarvis's motion. For the reasons stated below, Defendant's motion is denied.

### FACTUAL BACKGROUND

On February 7, 2022, officer Isaiah Perkins ("Officer Perkins" or "Perkins") of the Horry County Police Department was on patrol when he noticed Defendant's vehicle, bearing SC tag number UNN-974, driving in the opposite direction on the same road. Officer Perkins looked in his side view mirror and claims the license tag on the vehicle was not legible from fifty feet, as required by S.C. Code Ann. § 56-5-4530.[1] Officer Perkins made a U-turn and tried to catch up to the vehicle to make a traffic stop. By the time Officer Perkins caught up to Sarvis, Sarvis had pulled into a parking space at 801 Burcale Road in Myrtle Beach, South Carolina, and was getting out of his vehicle. Sarvis continued to walk away from Perkins and his car after repeatedly being

---

[1] South Carolina law provides in pertinent part that "[e]ither a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear. Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted." S.C. Code Ann. § 56-5-4530.

1

told to stop. Perkins finally was able to bring Sarvis under control and walk him back to his patrol vehicle, where he was detained.

Several officers, including Sergeant Crystal Buckingham ("Buckingham") arrived on the scene to assist Officer Perkins. After Sarvis was detained, Buckingham went to Sarvis's vehicle to see if there was anyone else inside. While standing outside of the vehicle, Buckingham saw a chrome-colored handgun in the driver's door handle in plain view. This prompted a search of the vehicle, where Buckingham later discovered a brown, powdery substance that was consistent with heroin. That substance had an approximate field weight of 4.2 grams. Buckingham ran the serial number on the firearm and found it to have been reported stolen out of North Carolina. On January 24, 2023, Sarvis was indicted on one count of knowingly possessing a firearm after being convicted of a crime punishable by imprisonment for more than one year in violation of 18 U.S.C. § 922(g)(1). Sarvis has filed a Motion to Suppress all evidence obtained as fruit of the poisonous tree.

## DISCUSSION

Sarvis contends "that the initial traffic stop was unconstitutional[,]" and therefore, "the initial seizure in this case was conducted in violation of his Fourth Amendment rights against unreasonable searches and seizures"[2] (DE 43-1, p. 3.) This Court disagrees. Perkins testified that he "observed that the vehicle that Sarvis was driving had tag lights that did not illuminate the rear tag properly, thus rendering the registration plate illegible from fifty feet," in violation of S.C. Code Ann. § 56-5-4530. (DE 49, p. 3.) The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. Amend. IV. "The essential purpose of the

---

[2] At the suppression hearing, the Court inquired from Defense Counsel and counsel confirmed that the suppression motion was based on the constitutionality of the stop of Sarvis's vehicle and not the search of the vehicle or ultimate seizure of the handgun. Therefore, the Court's discussion of this matter is limited to the same.

proscriptions in the Fourth Amendment is to impose a standard 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order 'to safeguard the privacy and security of individuals against arbitrary invasions . . . .'" Delaware v. Prouse, 440 U.S. 648, 653–54 (1979) (quoting Marshall v. Barlow's, Inc., 436 U.S. 307, 312 (1978).

Stopping an automobile and detaining its occupants constitute a "seizure within the meaning of [the Fourth Amendment]." Id.  Accordingly, [b]ecause an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest, we analyze the propriety of a traffic stop using the dual inquiry announced in the Supreme Court's holding in Terry v. Ohio, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." United States v. Green, 740 F.3d 275, 279 (4th Cir. 2014).  That inquiry asks, "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20.  A traffic stop is justified at inception "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." United States v. Palmer, 820 F.3d 640, 649 (4th Cir. 2016).  Furthermore, "[w]ithout question, such a violation may include failure to comply with traffic laws." Id.  "A reasonable suspicion exists when law enforcement officers possess 'a particularized and objective basis for suspecting the person stopped of criminal activity.'" United States v. Singh, 363 F.3d 347, 355 (4th Cir. 2004) (quoting Ornelas, 517 U.S. at 696, 116 S.Ct. 1657.)  Accordingly, "[a] reasonable suspicion is demonstrated when an officer is able to 'point to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity.'" United States v. Ortiz, 669 F.3d 439, 444 (4th Cir. 2012).

With these principles in mind, at the evidentiary hearing, Officer Perkins gave credible testimony that when he looked in his side view mirror, Sarvis was likely less than 50 feet away and Sarvis's tag lights did not illuminate his rear tag properly and was, therefore, illegible and in violation of South Carolina law.  Nevertheless, Sarvis argues that the traffic stop was not justified at its inception because his tag lights were, in fact, compliant with state law.  Sarvis relies on testimony from his girlfriend Lisa Fisk ("Fisk"), who testified that she believed the tag was illuminated at a distance greater than 50 feet, because she saw the license tag as Sarvis drove away earlier that evening.

Notwithstanding Fisk's testimony, the appropriate inquiry here is not whether Officer Perkins was correct in his assessment of the alleged traffic violation.  Rather, the question is did he "possess 'a particularized and objective basis for suspecting the person stopped of criminal activity[,]'" Singh, 363 F.3d at 355, demonstrated through "specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity."  Ortiz, 669 F.3d at 444.  The record, in this case, indicates that he did have an objective basis for suspecting a violation of S.C. Code Ann. § 56-5-4530.  Fisk's testimony otherwise does not change this outcome because "if an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable."  United States v. Arias, 213 F. App'x 230, 232 (4th Cir. 2007).  Given the facts and circumstances in this case, even if Officer Perkins was mistaken regarding Sarvis's tag lights, he provided sufficient, credible testimony that would support a conclusion that such a mistake was reasonable.

## **CONCLUSION**

For the foregoing reasons, Defendant Jeffery Martinez Sarvis's Motion to Suppress (DE 43) is **DENIED**.

**IT IS SO ORDERED.**

Florence, South Carolina
June 16, 2023

Joseph Dawson, III
United States District Judge